IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:10-CV-161-FL

MICHAEL J. PASCHALL, SR.,                )
                                         )
         Plaintiff/Claimant,             )
                                         )
                                         )        **MEMORANDUM AND**
                 v.                      )        **RECOMMENDATION**
                                         )
MICHAEL J. ASTRUE, Commissioner of       )
Social Security,                         )
                                         )
         Defendant.                      )

This matter is before the court on the parties' cross motions for judgment on the pleadings

pursuant to FED. R. CIV. P. 12(c). Claimant Michael J. Paschall, Sr., ("Claimant") filed this action

pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of his applications for a period

of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has

expired and the pending motions are ripe for adjudication. Having carefully reviewed the

administrative record and the motions and memoranda submitted by the parties, this court

recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's

Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

## STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on 30 October

2006, alleging disability beginning since 17 October 2006. (R. 16, 125-27). His claim was denied

initially and upon reconsideration. (R. 72-75, 83-85). A hearing before the Administrative Law

Judge ("ALJ") was held on 4 March 2009, at which Claimant was represented by counsel and a

vocational expert ("VE") appeared and testified. (R. 33-69). On 22 May 2009, the ALJ issued a

decision denying Claimant's request for benefits. (R. 13-32). On 20 February 2010, the Appeals Council denied Claimant's request for review. (R. 1-3). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth

2

in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(2).

In this case, Claimant alleges the following errors by the ALJ: (1) improper evaluation of treating source opinions; (2) making contradictory findings regarding the severity of Claimant's mental impairments; (3) improper assessment of Claimant's residual functional capacity ("RFC") and (4) improperly relying on VE testimony.[1] Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings at 5-9. ("Pl.'s

---

[1] While Claimant identifies four issues in the beginning of her brief, three of which pertain to the Claimant's RFC, a review of the discussions provided therein indicates Claimant's arguments are more aptly described as identified by the court.

3

Mem.").

## FACTUAL HISTORY

### I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 18). Next, the ALJ determined Claimant had the following severe impairments: degenerative disc disease, bulging disc in the lumbar spine, stenosis and spondylosis in the cervical spine, small fiber neuopathy, arthritic changes to heel pads, plantar fascitis, chronic obstructive pulmonary disease ("COPD"), depression and anxiety. *Id.* The ALJ also found Claimant had a nonsevere impairment of diverticulosis. (R. 19). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* In reviewing Claimant's alleged mental impairment and applying the technique prescribed by the regulations, the ALJ found Claimant experienced no restrictions in activities of daily living, mild difficulties in social functioning, mild difficulties with concentration, persistence or pace and has experienced no episodes of decompensation. (R. 20).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform sedentary work[2] with postural, manipulative and environmental limitations. (R.

---

[2] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a); Soc. Sec. Ruling ("S.S.R.") 96-9p, 1996 SSR LEXIS 6, at *8, 1996 WL 374185, at *3. "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. "Sitting" generally totals about 6 hours of an 8-hour workday. S.S.R. 96-9p, 1996

4

20). In particular, the ALJ found Claimant has the ability "to push with his feet" occasionally, to balance, stoop, kneel, crouch and climb stairs occasionally and to crawl less than occasionally and should be limited to occasional exposure to heat and pulmonary irritants. *Id.* In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 25). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work. (R. 26). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 27).

## II.    Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 54 years old and unemployed. (R. 38). Claimant has a bachelor's degree in criminal justice. (R. 38). Claimant's past work history includes working as an infantry leader in the army, a criminal investigator, a sales associate, a correction officer, an auto mechanic and a machine operator for a tree company. (R. 41-42, 44-46, 63).

Claimant testified to having numerous functional limitations as a result of his back pain and COPD. (R. 49, 52). Claimant has difficulty standing from a squatting position. (R. 48). Claimant testified that he can sit for up to 30 minutes. (R. 49). Claimant can stand for up to 10 minutes before he must sit down due to back and leg pain. (R. 50, 52). Claimant stated he cannot walk the 440 foot distance between his home and the mailbox without stopping to rest and attributed this limitation to COPD. (R. 52). Claimant testified that his doctor advised him to not lift over five pounds. (R.

SSR LEXIS 6, at *8-9, 1996 WL 374185, at *3. A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. § 404, Subpt. P, App. 2, Table 1. *Id.*

48-49).

Claimant suffers from depression and has seen a counselor for two years for treatment of depression and post-traumatic stress disorder ("PTSD") on a bimonthly basis.[3] (R. 52-53, 60). Claimant testified that he feels "useless" and "worthless" on an average day. (R. 52). Claimant stated further that he becomes nervous and experiences panic attacks when around large groups of people. (R. 51).

Claimant sleeps very little during some nights and during some days, Claimant sleeps all day. (R. 52). Claimant blamed medication side effects for his weight gain, sleep problems and forgetfulness. (R. 50, 53, 56). Claimant uses a nebulizer for breathing treatments three times a day. (R. 53). Claimant performs no household chores and leaves his home only for medical appointments as he does not wish to be around anyone. (R. 50-51). Claimant testified that he had not engaged in any activities with his three children in three or four years. (R. 55). Claimant spends the majority of the day sleeping or resting in a recliner and watching TV. (R. 57-58).

## III.    Vocational Expert's Testimony at the Administrative Hearing

Ann Newlight, Ph.D., testified as a VE at the administrative hearing. (R. 61-68). After the VE's testimony regarding Claimant's past work experience (R. 64-66), the ALJ asked the VE whether any jobs would be available for a hypothetical individual of the same age, education and work background as that of the claimant who is limited to sedentary work, has the capacity to stand and walk two hours and sit for up to six hours in an eight hour day, occasional climbing, balancing, stooping, kneeling, crouching, occasional pushing with his feet, less than occasional crawling, and

---

[3] The ALJ found that Claimant's alleged PTSD was not a medically determinable impairment as it "was not established either by treatment notes or objective medical findings." (R. 19).

occasional exposure to extreme heat and pulmonary irritants. (R. 66). The VE testified that the hypothetical individual could perform several sedentary jobs, including that of security officer (DOT 189.167-034; specific vocational preparation ("SVP") time of 7; 750 positions locally; 100,000 nationally) and claims adjudicator (DOT 169.267-010; SVP 7; 1,000 positions locally; 150,000 positions nationally). The VE explained that the hypothetical individual could not perform the above positions if he did not have the capacity to sustain the concentration for the skill level required of these positions. (R. 68). The VE testified further that if the hypothetical individual was limited to unskilled work, required additional breaks beyond that which are customarily allowable and was absent from work up to 20 percent of the time, the sedentary positions described above would be precluded. (R. 68).

## DISCUSSION

### I.     The ALJ did not err in evaluating Claimant's treating source opinions.

Claimant contends the ALJ's reasons for rejecting the opinions of Claimant's treating sources, James Kenney, M.D., a treating physician, Sandra Reed, a physician's assistant working with Dr. Kenney, and Sherry Tabron, a family nurse practitioner, are not supported by substantial evidence.[4] Pl.'s Mem. at 6-7. Claimant provides no discussion in support of her argument, and in fact, only expressly mentions Tabron's opinion. *Id.* at 6. Rather, Claimant's argument is limited to her contention that the ALJ's reasons for rejecting the opinions of her treating sources is not supported by substantial evidence followed by a summary regarding the evaluation of opinion evidence generally.

---

[4] Claimant does not identify this issue as a specific assignment of error. *See* Pl.'s Mem. at 2. Rather, Claimant includes it as a discussion within her first identified assignment of error alleging the ALJ made contradictory findings regarding the severity of Claimant's mental impairments. *Id.* at 6-7.

a. <u>Dr. Kenney</u>

The ALJ must generally give more weight to the opinion of a treating physician because that doctor is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. 20 C.F.R. § 404.1527(d)(2). However,"[c]ircuit precedent does not require that a treating physician's testimony 'be given controlling weight.'" *Craig*, 76 F.3d at 590 (quoting *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)). In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590; *see also Mastro*, 270 F.3d at 178 (citation omitted) (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence"); *Wireman v. Barnhart*, No. 2:05-CV-46, 2006 U.S. Dist. LEXIS 62868, at *23, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006) (stating an ALJ "may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source . . . if he sufficiently explains his rationale and if the record supports his findings"); 20 C.F.R. § 404.1527(d)(3).

When the ALJ does not give the opinion of a treating physician controlling weight, the ALJ must weigh the opinion pursuant to the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. 20 C.F.R. § 404.1527(d)(2)-(6); *see also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). Moreover, the ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by substantial evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's

8

medical opinion and the reasons for that weight." S.S.R. 96-2p, 1996 SSR LEXIS 9, at *12, 1996 WL 374188, at *5.

The medical opinion at issue appeared in a letter dated 21 November 2006, wherein Dr. Kenney stated, "This letter is to certify that [Claimant] is totally and permanently disabled." (R. 373). While noting statements concerning an individual's inability to work are reserved to the Commissioner, *see* 20 C.F.R. § 404.1527(e)(1); S.S.R. 96-5p, 1996 SSR LEXIS 2, at *5, 1996 WL 374183, at *2, the ALJ acknowledged such statements must nevertheless be evaluated based on all the evidence in the case record to determine the extent to which the opinion is consistent with the assessed RFC.[5] (R. 26). The ALJ acknowledged implicitly the length, frequency, nature and extent of Claimant's treatment relationship with Dr. Kenney for degenerative disc disease, small fiber neuropathy and COPD via multiple references to his treatment notes. (R. 23-24, 351-52, 541, 545, 548, 551, 553, 556, 559, 565, 568). She acknowledged further Dr. Kenney's May 2007 recommendation that Claimant seek counseling for depression. (R. 24, 559). However, the ALJ accorded limited weight to Dr. Kenney's November 2006 opinion because the statement was not supported by Dr. Kenney's treatment notes. (R. 26).

As observed by the ALJ, Dr. Kenney did not "state any functional limitations or offer any other evidence to support his [November 2006] opinion." (R. 23); *see* 20 C.F.R. § 404.1527(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical

---

[5] Claimant claims "the regulations certainly envision treating sources providing opinions on such issues as whether a claimant's impairments meet or equal a listed impairment or a claimant's residual functional capacity." Pl.'s Mem. at 6. While the regulations provide that medical source opinions on such issues are considered by the SSA, they also explicitly provide that "the final responsibility for deciding these issues is reserved to the Commissioner," 20 C.F.R. § 404.1527(e)(2), "because they are administrative findings that are dispositive of a case . . . ." 20 C.F.R. § 404.1527(e).

Case 5:10-cv-00161-FL   Document 40   Filed 01/10/11   Page 9 of 22

signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."). Dr. Kenney's treatment records provide no support of his opinion as they provide no physical examination findings nor do they offer insight into Claimant's functional abilities. (R. 23). Furthermore, treatment records from other sources do not support Dr. Kenney's statement. For example, Iqbal Singh, M.D. stated in his October 2006 progress report that Claimant had good muscle bulk and tone throughout, 5/5 muscle strength, reflexes 2+ throughout and a normal gait. (R. 351). Also, treatment records from Anuradha Rao-Patel, M.D., Claimant's pain management physician, do not support Dr. Kenney's statement. On 9 June 2008, Claimant advised Dr. Rao-Patel that he was capable of performing basic activities of daily living and household chores, including laundry, vacuuming and cooking (R. 23, 650) and on 4 August 2008, Claimant reported that he "finally felt where he is comfortable and able to function." (R. 23, 646). Subsequent reports indicate Claimant had worked out in his yard, shot BB guns with his sons, was "doing really well" and enjoying his candle-making hobby. (R. 25, 636, 638, 640, 644). Claimant's physical examinations conducted by Dr. Rao-Patel between 2008 and 2009 consistently indicate a normal gait (R. 635, 651), 5/5 motor strength throughout the bilateral upper and lower extremities (R. 635, 636, 642, 644, 651), no muscle atrophy (R. 651), a negative straight leg raise bilaterally in the seated position (R. 635, 644) and normal range of motion of his cervical spine (R. 651). (R. 23, 25). While Dr. Rao-Patel's initial examination indicated a normal range of motion of Claimant's lumbar spine, a February 2009 examination indicated a decreased range of motion of the lumbar spine. (R. 635, 651).

The ALJ properly concluded that treatment notes and Claimant's reports of activities recorded therein do not support Dr. Kenney's medical opinion. The absence of a sufficient rationale for the

10

opinion and the inconsistency between the opinion and other medical evidence in the record reasonably downgraded the true evidentiary value of Dr. Kenney's opinion. Additionally, the ALJ complied with S.S.R. 96-2p by making her decision sufficiently specific for subsequent viewers to understand the weight accorded Dr. Kenney's opinion and the reasons for said weight. *See Koonce v. Apfel*, No. 98-1144, 166 F.3d 1209, 1999 U.S. App. LEXIS 307, at *7, 1999 WL 7864, at *2 (4th Cir. 1999) ("An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies or has not given good reason for the weight afforded a particular opinion.") (internal citations and quotations omitted). Accordingly, the ALJ was within her discretion in not giving controlling weight to Dr. Kenney's opinion.

b. Ms. Reed and Ms. Tabron

Pursuant to the regulations, nurses and physician assistants are not considered acceptable medical sources. *See* 20 C.F.R. § 404.1513(a) (defining "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists). Nonetheless, "evidence from other sources," such as nurse practitioners and physician assistants, may be used "to show the severity of [a claimant's] impairment(s) and how it affects [his] ability to" engage in work-related activities. *Id.* § 404.1513(d) (including as "other sources" nurse practitioners, physicians' assistants, school teachers and social workers); *see also* S.S.R. 06-03p, 2006 SSR LEXIS 4, at *5 , 2006 WL 2329939, at *2 (explaining the opinions from "other [medical] sources . . . may provide insight into the severity of [a claimant's] impairment and how it affects [a claimant's] ability to function"). Since medical sources such as nurse practitioners and physicians' assistants "have increasingly assumed a greater percentage of the

11

treatment and evaluation functions previously handled primarily by physicians," their "[o]pinions

. . . are important and should be evaluated on key issues such as impairment severity and functional

effects, along with the other relevant evidence in the file." S.S.R. 06-03p, 2006 SSR LEXIS 5, at

\*8, 2006 WL 2329939, at \*3. Indeed, "depending on the particular facts in a case, and after applying

the factors for weighing opinion evidence, an opinion from a medical source who is not an

'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including

the medical opinion of a treating source." *Id.*

　　The first opinion at issue is a 22 September 2008 medical source statement regarding

Claimant's physical impairments by Reed wherein she indicated, *inter alia*, that Claimant (1) can sit

for less than fifteen minutes at a time and no more than 1 hour total during an eight-hour work day

and that it is medically necessary to elevate both legs while sitting to minimize pain; (2) can stand

or walk for less than fifteen minutes at a time and no more than 2 hours total during an eight-hour

work day and (3) must rest, lie down or recline in a supine position for four hours of an eight-hour

work day. (R. 591-93). Reed stated further that Claimant can lift up to 5 pounds occasionally but

can lift no greater weight, can never balance when standing or walking "on level terrain," perform

any postures of the neck (i.e., forward and backward flexion, rotation to the left or right) or reach or

finger with either hand. (R. 593-94). Reed indicated also that Claimant requires a hand held

assistive device to aid in both walking and standing but only when traversing uneven surfaces,

terrains or slopes, for prolonged ambulation and "when pain flares are severe." (R. 564-95). Finally,

Reed noted that Claimant's work absences would exceed three times a month. (R. 595).

　　The second opinion at issue is a 15 December 2008 medical source statement regarding

Claimant's mental impairments by Tabron wherein she indicated, *inter alia*, that Claimant

12

experiences marked restriction of activities of daily living, marked difficulties in maintaining social functioning, constant deficiencies of concentration and continual episodes of deterioration or decompensation in work or work-like settings. (R. 609). Tabron stated also that Claimant is unable to work. (R. 607).

In evaluating the opinions by Reed and Tabron, the ALJ noted they are "inconsistent in most respects with other statements in the claimant's medical records mentioning activities that [claimant] reports, which the undersigned finds to be more reliably indicative of the claimant's functional limitations." (R. 26). The ALJ stated further that these opinions "generally offer no evaluation of the claimant's functional abilities and assessments made as the degree of limitations, when offered, are generally not supported by the treating notes or the claimant's reports of activities recorded contemporaneously in the treatment notes." *Id.*

With respect to Claimant's physical limitations, physical examinations by Dr. Singh and Dr. Rao-Patel, discussed in detail above, do not indicate Claimant's impairments limit him to the extent determined by Reed. In particular, there is no evidence in the record supporting Reed's opinion that Claimant is limited to lifting no more than five pounds, requires an assistive device for ambulating, is unable to reach, handle or finger with his right or left hand or is unable to look up, down or side to side. Such limitations are called into question in light of findings upon physical examination by Claimant's treating physicians, which include a normal gait (R. 635, 651), 5/5 motor strength throughout the bilateral upper and lower extremities (R. 635, 636, 642, 644, 651), no muscle atrophy (R. 651) and normal range of motion of the cervical spine (R. 651). (R. 23, 25). Furthermore, Claimant's own reports of daily activities, including candle making, shooting guns, vacuuming and cooking, offer further support of the ALJ's determination that Reed's opinion was inconsistent with

13

the record as a whole.

As for Claimant's mental impairments, Tabron states she has seen Claimant on a biweekly basis since June 2007. (R. 606). However, Tabron cites no records indicating such treatment and Claimant provides no summary of Tabron's medical records. In fact, no such records appear in the administrative transcript. Additionally, the functional limitations indicated by Tabron are undermined by other evidence of record. For example, Tabron indicated Claimant has moderate restriction of activities of daily living. (R. 609). However, Claimant performs basic activities of daily living and household chores, including laundry, vacuuming and cooking, makes candles and shoots guns. (R. 609). Also, Tabron stated Claimant experienced constant deficiencies of concentration, persistence or pace. (R. 609). However, the ALJ noted the objective medical evidence indicates no evidence of short-term memory loss or significant deficiencies in concentration. Dr. Kenney's records for 2006 and 2007 indicate Claimant experienced no short-term memory deficits (R. 24-25, 541, 545, 548, 551, 553, 556, 559). A consultative examination by Anthony Carraway, M.D., indicated Claimant had no impairment of short-term memory and mild impairment of immediate memory, attention and concentration and ability to understand, retain and perform instructions. (R. 519). Dr. Carraway further found that Claimant's ability to perform simple, repetitive tasks and to persist at those tasks primarily would be limited by objective *physical* complaints. (R. 519). Given this evidence, the ALJ properly rejected Tabron's opinion that Claimant had poor mental abilities in most areas.

## II.  The ALJ's contradictory findings regarding the severity of Claimant's mental impairments is not reversible error.

Claimant contends the ALJ committed reversible error by issuing contradictory findings

14

regarding his mental impairment. Pl.'s Mem. at 5. In particular, Claimant states the ALJ's step two severity finding as to Claimant's depression and anxiety contradicts her finding that such impairments resulted in no more than mild functional limitations. *Id.*

When a claimant alleges a mental impairment, the ALJ "must first evaluate [the claimant's] pertinent symptoms, signs and laboratory findings" to ascertain whether the claimant has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). Second, if the ALJ determines that an impairment exists, the ALJ must specify in her decision the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s). *Id.* Third, the ALJ must rate the degree of functional limitation resulting from the impairment. 20 C.F.R. § 404.1520a(b)(2). To accomplish this, the ALJ must analyze the degree of limitation observed with respect to activities of daily living, social functioning, concentration, persistence or pace and episodes of decompensation. A rating of "none" or "mild" in the first three functional areas and "none" in the fourth will yield a finding that the impairments are not severe "unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1). Basic work activities are the abilities and aptitudes necessary to do most jobs, including: physical functions such as sitting and standing; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b).

In this case, the existence of medically determinable mental impairments of depression and anxiety is not disputed. Accordingly, the ALJ assessed and documented the limitations resulting from Claimant's mental impairment at step two (and three) of the evaluation process. (R. 20). In

15

particular, the ALJ concluded these impairments resulted in no restrictions in activities of daily living, mild difficulties in social functioning, mild difficulties with concentration, persistence or pace and no episodes of decompensation. *Id.* In explaining these functional limitation findings, the ALJ noted the following: (1) Claimant's involvement with this children's Halloween activities (R. 638), shooting BB guns with his children (R. 640), Claimant's report that he was keeping busy thanks to school-related activities of his children (R. 640), and Claimant's discussion of his candle-making hobby with Dr. Rao-Patel (R. 636); (2) Claimant's testimony that "he does not go anywhere because he does not like to be around large groups of people; and (3) Claimant's testimony that he is capable of watching television but his medications cause forgetfulness.

Despite findings of minimal functional limitations, the ALJ nevertheless characterized Claimant's impairments of depression and anxiety as severe. As Claimant points out, this determination is arguably not in keeping with the applicable regulation, especially in light of no further discussion supporting the ALJ's severity determination. Nevertheless, the court finds this potential contradiction is not reversible error. As long as a claimant has any severe impairment or combination of impairments, the ALJ must proceed beyond step two and consider all of the impairments (including non-severe impairments) at the remaining steps of the sequential evaluation process, which in this case was done. *See* 20 C.F.R. § 404.1523. Thus, assuming, *arguendo*, that the ALJ should have characterized Claimant's mental impairments as non-severe, such a finding would nevertheless require the ALJ to consider Claimant's mental impairments in subsequent steps of the sequential evaluation. *See* 42 U.S.C. § 423(d)(2)(B) (When a claimant has a number of impairments, including those deemed not severe, the ALJ must consider their cumulative effect in making a disability determination."); *see also* S.S.R. 96-8p, 1996 SSR LEXIS 5, at *14, 1996 WL

374184, at *5 ("In assessing RFC, the [ALJ] must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'"). Accordingly, because the ALJ did not end her analysis at step two, but continued with the remaining steps in her disability determination, the ALJ's failure to explain the seemingly contradictory findings at step two of the evaluation process regarding Claimant's mental impairments does not constitute reversible error. *See Austin v. Astrue*, No. 7:06-CV-00622, 2007 U.S. Dist. LEXIS 77892, at *18, 2007 WL 3070601, *6 (W. D. Va. Oct. 18, 2007) (holding that "[e]rrors are harmless in Social Security cases when it is inconceivable that a different administrative conclusion would have been reached absent the error") (citing *Camp v. Massanari*, 22 Fed. Appx. 311 (4th Cir. 2001)).

**III.    The ALJ properly assessed Claimant's RFC.**

Claimant contends that the ALJ's RFC finding is not supported by substantial evidence. In particular, Claimant contends (1) substantial evidence does not support the ALJ's determination that Claimant retained the RFC to perform a limited range of sedentary work and (2) the ALJ failed to determine Claimant's ability to perform basic work-related mental activities in accordance with Social Security Ruling 96-8p. Pl.'s Mem. at 7-9.

Social Security Ruling 96-8p provides that the "RFC assessment must . . . assess [the individual's] work-related abilities on a function-by-function basis." S.S.R. 96-8p, 1996 SSR LEXIS 5, at *2, 1996 WL 374184, at *1; *see also* 20 C.F.R. § 404.1545(b)-(d). The functions considered,

17

where applicable, include physical,[6] mental[7] and any other[8] abilities affected by an individual's impairment. *See* 20 C.F.R. § 404.1545 (b)-(d). In this case, with respect to physical and "other" abilities impacted, the ALJ noted exertional limitations and in particular, an inability to lift more than 10 pounds and to walk or stand for more than two hours in an 8-hour day. (R. 20). The ALJ found that Claimant could occasionally balance, stoop, kneel, crouch and climb stairs and should be limited to occasional exposure to heat and pulmonary irritants. In assessing Claimant's physical abilities, the ALJ relied on examination findings by Drs. Kenney, Singh and Rao-Patel, discussed at length above, which include a normal gait, good muscle tone, 5/5 muscle strength throughout and no muscle atrophy. (R. 351, 635, 636, 642, 644, 651). The ALJ noted examination findings also indicated decreased range of motion of the lumbar spine, some straightening of the lumbar lordosis and diffuse tenderness along the lower lumbar paraspinals. (R. 23, 635). The ALJ also considered the physical RFC assessments performed by non-examining state agency consultants who found Claimant capable of performing medium work. (R. 25, 487-94, 508-15). However, in light of the medical evidence of record and statements found by Claimant found to be credible, the ALJ accorded these opinions minimal weight. (R. 25).

---

[6] Physical abilities include "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching)...." 20 C.F.R. §§ 404.1545(b), 416.945(b).

[7] Mental abilities include "limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting...." 20 C.F.R. §§ 404.1545(c), 416.945(c).

[8] In defining "other abilities," the regulations provide "[s]ome medically determinable impairment(s), such as skin impairment(s), epilepsy, impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions, may cause limitations and restrictions which affect other work-related abilities." 20 C.F.R. §§ 404.1545(d), 416.945(d).

As for mental abilities, the ALJ recognized that in making an RFC determination, she does so by considering a claimant's ability to meet various requirements of work, including mental requirements. In particular, the ALJ explained,

> The mental [RFC] capacity assessment used at steps 4 and 5 of the sequential evaluation process requires . . . itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, *the following [RFC] assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.*"[9]

(R. 20) (footnote and emphasis added). "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." S.S.R. 96-8p, 1996 SSR LEXIS 5, *17, 1996 WL 374184, at *6; accord S.S.R. 85-15, 1985 SSR LEXIS 20, at *11 , 1985 WL 56857, at *4 ("The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.").

The ALJ acknowledged the mental RFC evaluation performed by Clifford Charles, Ph.D., a state agency non-examining consultant, who found Claimant was limited to simple, routine and

---

[9] Most of the listings for mental disorders contained in appendix 1 (Listing of Impairments) impose two requirements: first, that the claimant possess certain particular signs or symptoms which are generally found in paragraph A of each listing (i.e., the "A criteria") and second, that the symptoms result in a specific degree of functional limitations (assessed based on activities of daily living, social functioning, concentration, persistence or pace and episodes of decompensation) which are set forth in paragraph B of the listings (i.e., the "B criteria"). *See Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00).

repetitive tasks. (R. 24, 538). The ALJ, however, accorded minimal weight to Dr. Charles' opinion "to the extent supported by additional evidence of record." (R. 25). This "additional" evidence includes objective findings by Dr. Kenney and Dr. Carraway, which indicate no evidence of short-term memory loss or significant deficiencies in concentration, Claimant's reports of activities to treating sources and statements in a third-party report by Tonya Campbell, Claimant's girlfriend, indicating Claimant's conditions have no impact on his memory, completing tasks, concentration, understanding or following instructions. (R. 24-26, 174, 541, 545, 548, 551, 553, 556, 559).

The ALJ's RFC discussion, which spans four single-spaced pages and is replete with citations to the record, demonstrates a thorough review of Claimant's medical history and a detailed account of Claimant's claims concerning his impairments. The ALJ analyzed all of the relevant evidence, sufficiently explained her findings and rationale in crediting the evidence and applied the correct legal standards in evaluating Claimant's RFC. Accordingly, Claimant's argument as to this issue is without merit.

**IV. The ALJ properly relied on the testimony of the vocational expert.**

Claimant contends the ALJ committed error by improperly relying on VE testimony. Pl.'s Mem. at 9. Specifically, Claimant argues that the hypothetical posed to the VE did not address whether Claimant could perform work-related mental activities. *Id.* at 10. For the following reasons, this court finds Claimant's argument to be unpersuasive.

The purpose of a VE is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). As such, hypothetical questions posed to a VE must accurately set forth all of a claimant's physical and mental impairments. *Id.* "Testimony elicited by hypothetical questions that

20

do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." *Pratt v. Sullivan*, 956 F.2d 830, 836 (8th Cir. 1992). The corollary to this rule is that the ALJ need only include in his questioning those impairments which the ALJ has found to be credible. *See Johnson*, 434 F.3d at 659 (holding a hypothetical valid because it adequately reflected claimant's characteristics as found by the ALJ); *Ehrhart v. Sec'y, Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992) (noting "the hypothetical question posed by the ALJ was proper because it reflected [claimant's] impairments to the extent that the ALJ found them supported by evidence in the record."). If the ALJ does not believe that a claimant suffers from one or more claimed impairments, and substantial evidence supports that conclusion, then the ALJ does not err if he fails to include those impairments in his questioning of the VE. *Sobania v. Sec'y, Health & Human Servs.*, 879 F.2d 441 (8th Cir. 1989) (explaining "the hypothetical is sufficient if it sets forth the impairments which are accepted as true by the ALJ").

In this case, the hypothetical posed to the VE incorporated Claimant's RFC as determined by the ALJ and the ALJ precisely set out Claimant's limitations. (R. 66); see *Walker*, 889 F.2d at 50. While Claimant contends that the ALJ should have included additional limitations in the hypothetical, the ALJ's determination that Claimant was restricted by only those limitations that are reflected in the hypothetical is supported by substantial evidence. Accordingly, Claimant's argument as to this issue is without merit.

21

## CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment on the Pleadings be DENIED, Defendant's Motion for Judgment on the Pleadings be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 7th day of January, 2011.

Robert B. Jones, Jr.
United States Magistrate Judge

22