IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No.5:10-CV-161-FL

MICHAEL J. PASCHALL, SR.,          )
                                   )
            Plaintiff,             )
                                   )
      v.                           )
                                   )          ORDER
MICHAEL J. ASTRUE,                 )
Commissioner of Social Security,   )
                                   )
            Defendant.             )
                                   )

       This matter is before the court on the parties' cross motions for judgment on the pleadings

(DE ## 34, 38). Pursuant to 28 U.S.C. § 636(b)(1), United States Magistrate Judge Robert B. Jones,

Jr., entered a memorandum and recommendation ("M&R") wherein he recommended that the court

deny plaintiff's motion, grant defendant's motion, and that the final decision of the Commissioner

be upheld. Plaintiff filed objection to the M&R, to which defendant responded. In this posture, the

issues raised are ripe for review. For the reasons that follow, plaintiff's objections are overruled.

Plaintiff's motion for judgment on the pleadings is denied, defendant's motion for judgment on the

pleadings is granted, and the final decision of the Commissioner is upheld.

## STATEMENT OF THE CASE

       Plaintiff protectively filed an application for a period of disability and disability insurance

benefits on October 30, 2006, alleging a disability onset date of October 17, 2006. (R. 125-27)

Plaintiff's claim was denied initially and upon reconsideration. (R. 72-75, 83-85) A hearing before

the Administrative Law Judge ("ALJ") was held on March 4, 2009, at which plaintiff was

represented by counsel and a vocational expert ("VE") appeared and testified. (R. 33-69) On May 22, 2009, the ALJ issued a decision denying plaintiff's request for benefits. (R. 13-32) On February 20, 2010, the Appeals Council denied plaintiff's request for review, thereby establishing the ALJ's determination as the final decision of the Commissioner. (R. 1-3)

On April 21, 2010, plaintiff filed complaint in this court seeking review of the final administrative decision. Defendant answered on June 24, 2010. Plaintiff thereafter moved for judgment on the pleadings, and defendant likewise moved for judgment on the pleadings The matter was referred to the magistrate judge, who entered his M&R on January 10, 2011. Plaintiff timely objected to the M&R, to which objection defendant responded.

## DISCUSSION

A.    Standard of Review

The court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3) to review the Commissioner's denial of benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). The standard is met by "more than a mere scintilla of evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

To assist it in its review of the Commissioner's denial of benefits, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition [of the motions for judgment on the pleadings]." 28 U.S.C.

2

§ 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. § 636(b)(1)(C). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

B.     Analysis

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process as follows:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

Albright v. Comm'r of Soc. Sec. Admin., 174 F.3d 473, 475 n. 2 (4th Cir. 1999); see also 20 C.F.R. § 404.1520(a)(4). The burden of proof and production during the first four steps rests on claimant, but at the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that claimant can perform. See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps. Id.

In assessing the severity of mental impairments, the ALJ must apply the "special technique" set forth in 20 C.F.R. § 404.1520a(b)-(c). That provision requires the ALJ to rate the degree of

3

claimant's functional limitation across four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. Id. § 404.1520a(c). The ALJ must incorporate pertinent findings and conclusions based on the "special technique" into his written decision. Id. § 404.1520a(e)(2).

In this case, applying the five-step evaluation process, the ALJ found plaintiff "not disabled." At step one, the ALJ found that plaintiff was no longer engaged in substantial gainful employment. (R. 18) At step two, the ALJ determined that plaintiff had the following severe impairments: degenerative disc disease, bulging disc in lumbar spine, stenosis and spondylosis in cervical spine, small fiber neuropathy, arthritic changes to heel pads, plantar fascitis, chronic obstructive pulmonary disease ("COPD"), depression, and anxiety. (R. 18)

At step three, the ALJ determined that the impairments were not severe enough, either individually or in combination, to meet or medically equal a listed impairment. (R. 19) In assessing plaintiff's alleged mental impairments and applying the "special technique" required by the regulations, the ALJ found plaintiff experienced no restrictions in activities of daily living, mild difficulties in social functioning, mild difficulties with concentration, persistence or pace, and has experienced no episodes of decompensation. (R. 19-20)

Prior to proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC"), finding that plaintiff had the ability to perform sedentary work with postural, manipulative and environmental limitations. (R. 20) Specifically, the ALJ found that plaintiff has the ability to push with his feet occasionally, to balance, stoop, kneel, crouch and climb stairs occasionally, and to crawl less than occasionally and should be limited to occasional exposure to heat and pulmonary irritants. (R. 20) In making the assessment, the ALJ found plaintiff's statements about his limitations

4

not fully credible. (R. 25) At step four, the ALJ determined that plaintiff did not have the RFC to perform the requirements of his past relevant work. (R. 26) At step five, however, upon considering plaintiff's age, education, work experience and RFC, the ALJ determined that plaintiff was capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 27)

As correctly articulated by the magistrate judge, plaintiff's motion for judgment on the pleadings advances argument as to four asserted errors by the ALJ: (1) improper evaluation of treating source opinions; (2) making contradictory findings regarding the severity of plaintiff's mental impairments; (3) improper assessment of plaintiff's RFC; and (4) improperly relying on VE testimony. The magistrate judge found no merit in any of these arguments and recommends upholding the ALJ's decision. Plaintiff objects to the magistrate judge's analysis and recommended disposition.

     1.    Evaluation of Treating Source Opinions

Plaintiff argues that the ALJ improperly evaluated the opinions of plaintiff's treating sources., specifically asserting that "the ALJ's stated reasons for rejecting the opinions of the plaintiff's treating sources . . . is not supported by substantial evidence." (Pl.'s Mem., p. 6) The magistrate judge determined that plaintiff's argument is meritless, concluding that the ALJ properly afforded limited weight to the treating source opinions. (M&R, pp. 8-14) Plaintiff objects.

In deciding whether a claimant is disabled, the ALJ is required to consider medical opinions in the case record, along with the rest of the relevant evidence. 20 C.F.R. § 404.1527(b). The ALJ generally gives more weight to the opinions of treating sources, because they are often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. Id., § 404.1527(d)(2).

5

Fourth Circuit precedent is clear, however, that the ALJ is not required to give "controlling weight" to the opinion of a treating physician. See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (noting that "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence"); see also Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996) (noting that "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight"). Further, "an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source . . . if he sufficiently explains his rationale and if the record supports his findings." Wireman v. Barnhart, No. 2:05-CV-46, 2006 WL 2565245, *8 (W.D.Va. Sept. 5, 2006).

Under the regulations, when an ALJ does not give a treating source opinion controlling weight, the ALJ applies the following factors to determine the weight to give the opinion: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) any other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)-(6). The ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." S.S.R. 96-2p, 1996 WL 374188, at *5.

Significantly, the regulations make clear that statements regarding issues reserved to the Commissioner, including statements of opinion that a claimant is disabled, are not considered "medical opinions" and are not given any special significance. 20 C.F.R. § 404.1527(e).

In addition, the regulations provide that only certain professionals may provide medical

6

evidence to establish an impairment. 20 C.F.R. § 404.1513(a). These "acceptable medical sources" include licensed physicians and licensed or certified psychologists, among others not relevant for purposes of this case. Id. However, the regulations also provide that evidence from "other sources" may be used to show the severity of a claimant's impairment and the effect of the impairment on a claimant's ability to work. Id., § 404.1513(d). These "other sources" include nurse practitioners, physicians' assistants, and therapists. Id., § 404.1513(d)(1)-(4).

At issue are three treating source opinions: (1) an opinion by Dr. Kenney, plaintiff's treating physician, dated November 21, 2006; (2) a statement by Sandra Reed ("Reed"), Dr. Kenney's physician's assistant, dated September 22, 2008; and (3) a statement by Sherry Tabron ("Tabron"), the social worker whom plaintiff was seeing for therapy and counseling, dated December 15, 2008. Applying the requirements set forth above to this case, it is clear that the ALJ properly evaluated these opinions.

The first opinion at issue is a blanket letter, dated November 21, 2006, wherein Dr. Kenney stated that plaintiff "is totally and permanently disabled." The ALJ acknowledged the letter, but noted that "to the extent that the treating source opinions address the ultimate issue of the claimant's disability from work, they are not entitled controlling weight." (R. 26) The ALJ then explained that an "opinion [addressing the ultimate issue] will be evaluated based on all the evidence in the case record to determine the extent to which the opinion is consistent with the assessed residual functional capacity." (R. 26) The ALJ acknowledged the length, frequency, nature and extent of plaintiff's treatment by Dr. Kenney, pointing to treatment notes spanning a period of several years that related to pain management, degenerative disc disease, small fiber neuropathy, COPD, and depression. (R. 23-26)

7

Ultimately, the ALJ gave limited weight to Dr. Kenney's November 21, 2006, letter, finding that it was not supported by Dr. Kenney's treatment notes. (R. 26) Indeed, "Dr. Kenney did not state any functional limitations or offer any other evidence to support his opinion." (R. 23) The regulations provide that "the more a medical source presents relevant evidence to support an opinion" and "the better explanation a source provides for an opinion," the more weight will be given to the opinion. 20 C.F.R. § 404.1527(d)(3). The ALJ properly compared Dr. Kenney's opinion, which lacked supporting rationale or explanation, to other medical evidence in the record, which was inconsistent with Dr. Kenney's opinion. See M&R, p. 10 (listing medical evidence of record that directly contradicts Dr. Kenney's opinion).

For these reasons, the ALJ was within her discretion to give limited weight to Dr. Kenney's opinion. Further, the ALJ's decision gave specific reasons for the limited weight given to the opinion, which was supported by evidence in the case record, as required. See S.S.R. 96-2p, 1996 WL 374188, at *5. The written decision is specific enough to allow subsequent reviewers, including the undersigned, to clearly understand the weight that was given to the opinion and the reasons for that weight, as required. See id. On these facts, the ALJ's determination stands. See Koonce v. Apfel, 166 F.3d 1209 (4th Cir. 1999) (unpublished table decision) (stating that "[a]n ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies' or has not given good reason for the weight afforded a particular opinion").

Plaintiff also argues the ALJ improperly evaluated two "other source" opinions. The first is Reed's medical source statement, dated September 22, 2008, regarding plaintiff's physical impairments. (R. 590-596) As correctly summarized by the magistrate judge, Reed's statement

8

indicated, *inter alia*, that plaintiff (1) can sit for less than fifteen (15) minutes at a time and no more than one hour total during an eight-hour work day, and that it is medically necessary to elevate both legs while sitting; (2) can stand or walk for less than fifteen minutes at a time and no more than two hours total during an eight-hour work day; and (3) must rest, lie down or recline in a supine position for four hours of an eight-hour work day. (R. 591-593) Further, Reed stated that plaintiff can lift up to five pounds occasionally, but cannot lift more weight, can never balance when standing or walking "on level terrain," cannot perform any postures of the neck, and cannot reach or finger with either hand. (R. 593-594) Further, Reed stated that plaintiff sometimes requires a hand-held assistive device when walking and standing. (R. 594-595) Lastly, Reed noted that plaintiff's work absences would exceed three times per month. (R. 595)

The second "other source" opinion is Tabron's medical source statement, dated December 15, 2008, regarding plaintiff's mental impairments. (R. 606-610) Tabron indicated in her statement that plaintiff experiences moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning, constant deficiencies of concentration, persistence or pace, and continual episodes of deterioration or decompensation in work or work-like settings. (R. 609) Tabron further concluded that plaintiff "is unable to work." (R. 607)

Like Dr. Kenney's opinion, the ALJ ultimately gave limited weight to Reed and Tabron's statements. (R. 26) The ALJ found that "both Ms. Reed's and Ms. Tabron's statements are inconsistent in most respects with other statements in the claimant's medical records mentioning activities that he reports, which the undersigned finds to be more reliably indicative of the claimant's functional limitations." (R. 26) The ALJ further observed that the statements "generally offer no evaluation of the claimant's functional abilities and assessments made as to the degree of limitations,

9

when offered, are generally not supported by the treating notes or the claimant's reports of activities recorded contemporaneously in the treatment notes." (R. 26) Once again, the ALJ observed that "to the extent that the treating source opinions address the ultimate issue of the claimant's disability from work, they are not entitled to controlling weight . . . or special significance." (R. 26)

The ALJ was within her discretion to determine that Reed's statement was entitled only to limited weight based on the evidence in the record contradicting Reed's assessment of plaintiff's physical limitations. For example, the limitations as reported by Reed are directly contradicted by evidence in the record that plaintiff's gait was within normal limits, that plaintiff demonstrated 5/5 motor strength in his bilateral upper and lower extremities (R. 635), that plaintiff had no muscular atrophy and that plaintiff had a normal range of motion in his cervical and lumbar spine (R. 651). Additionally, plaintiff's own reports to Dr. Rao-Patel indicate that plaintiff could perform basic activities of daily living and household chores, including bathing, laundry, vacuuming and cooking. (R. 650) Plaintiff also reported doing yard work (R. 644), being "busy" with his children as they started back to school (R. 642), shooting guns with his sons in the yard (R. 640), and spending time pursuing his candle-making hobby (R. 636). The ALJ thoroughly reviewed all of this evidence and more in her written decision. (R. 23) Based on the record as a whole, the ALJ was well within her discretion to give limited weight to Reed's statement.

The ALJ was also within her discretion to determine that Tabron's statement was entitled only to limited weight based on the evidence of record contradicting Tabron's assessment of plaintiff's mental limitations. First, Tabron reported having treated plaintiff twice monthly since June 2007, but supplied treatment records. Further, Tabron reported that plaintiff has moderate restriction of activities of daily living (R. 609), but, as mentioned above, the evidence of record

contains reports from plaintiff himself informing that he participated in activities with his children, shot guns in the yard, did yard work, pursued his candle-making hobby, and did household chores including bathing, laundry, vacuuming and cooking. Additionally, although Tabron's statement reported that plaintiff experienced constant deficiencies of concentration, persistence or pace, treatment records from Dr. Kenney indicate that plaintiff experienced no short-term memory deficits (R. 24-25, 541- 545- 548, 551, 553, 556, 559). Also, Dr. Carraway's examination reports indicated that plaintiff "had no impairment of short-term memory and mild impairment of immediate memory and mild impairment of attention and concentration," and that plaintiff's "ability to perform simple, repetitive tasks and to persist at those tasks would be limited by his objective *physical* complaints." (R. 519) (emphasis added).

The Fourth Circuit has recognized that an ALJ may properly discredit "other source" opinions where there is substantial evidence in the record contradicting those "other source" opinions. See Morgan v. Barnhart, 142 Fed. App'x. 716, 725 (4th Cir. 2005). The ALJ was well within her discretion, therefore, to determine that Reed and Tabron's statements were entitled to limited weight given the evidence in the record that was directly contradictory.

Based on the foregoing, the ALJ properly evaluated the opinions of Dr. Kenney, Reed, and Tabron. The magistrate judge recommended that plaintiff's assignment of error on this ground be overruled. Plaintiff objects; however, based on the thorough analysis set forth above, plaintiff's objection is overruled.

      2.      Findings Regarding the Severity of Plaintiff's Mental Impairments and

11

Assessment of Plaintiff's RFC[1]

Plaintiff next argues that the ALJ made "contradictory findings" by concluding at step two that plaintiff has a severe mental impairment, but "also concluding that the claimant's mental impairments result in mild restrictions of activities of daily living, mild difficulties in maintaining social functioning, no difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation."[2] (Pl.'s Mem. at 5)

When assessing a claimant's mental impairment, the ALJ must first evaluate the claimant's pertinent symptoms, signs, and laboratory findings to determine whether the claimant has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). If a medically determinable mental impairment exists, the ALJ then must specifically identify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment. Id. Then, the ALJ must rate the degree of functional limitation resulting from the impairment. Id., § 404.1520a(b)(2). Specifically, the ALJ must rate the degree of claimant's functional limitation across four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. Id. § 404.1520a(c)(3). If the ALJ rates the degree of limitation in the first three areas as "none" or "mild," and "none" in the fourth area, the ALJ generally will conclude that the mental impairment is not severe unless the evidence otherwise indicates there is more than

---

[1] The magistrate judge acknowledged that plaintiff advanced argument that the ALJ's findings regarding the severity of plaintiff's mental impairments were contradictory, and also advanced argument that the ALJ did not properly consider plaintiff's mental impairments when assessing RFC. The magistrate judge discussed these arguments separately in sections II and III of the M&R. In his objections, plaintiff does not identify specifically which section of the magistrate judge's analysis he objects to. Because plaintiff's discussion regarding these arguments is blended, the court also combines its analysis for the two.

[2] Through apparent inadvertence, plaintiff misstates the ALJ's findings, which were that plaintiff had no restriction on activities of daily living, mild difficulties in social functioning, mild difficulty with regard to concentration, persistence or pace, and no episodes of decompensation. (R. 19-20)

a minimal limitation in your ability to do basic work activities. Id. § 404.1520a(d)(1).

Here, at step two, the ALJ determined that plaintiff suffers from severe impairments which include, *inter alia*, depression and anxiety. (R. 18) At step three, the ALJ concluded that these impairments resulted in: (1) no limitation in activities of daily living (noting plaintiff's involvement with his children and his candle-making hobby); (2) mild difficulty in social functioning (noting plaintiff does not go into public because he does not like to be around large groups of people); (3) mild difficulty with regard to concentration, persistence or pace (noting that plaintiff is able to watch television, but complains of some forgetfulness); and (4) no episodes of decompensation. (R. 19-20)

Plaintiff argues that the ALJ's characterization of plaintiff's depression and anxiety as "severe" is inconsistent with the ALJ's findings of minimal functional limitations. (Pl.'s Mem. at 5). Addressing this argument, the magistrate judge concluded that "[a]s claimant points out, this determination is arguably not in keeping with the applicable regulation . . . nevertheless, the court finds this potential contradiction is not reversible error." (M&R, p. 16) In reaching this conclusion, the magistrate judge observed that the ALJ must consider all of a claimant's impairments, including those which are non-severe, at the further steps of the sequential evaluation. (M&R, p. 16) The magistrate judge therefore reasoned that "because the ALJ did not end her analysis at step two, but continued with the remaining steps in her disability determination, the ALJ's failure to explain the seemingly contradictory findings at step two of the evaluation process regarding Claimant's mental impairments does not constitute reversible error." (M&R, p. 17) (citing Austin v. Astrue, No. 7:06-CV-622, 2007 WL 3070601, *6 (W.D.Va. Oct. 18, 2007) (holding that "[e]rrors are harmless in Social Security cases when it is inconceivable that a different administrative conclusion would have been reached absent the error")).

13

Plaintiff objects to the magistrate judge's analysis, stating that the magistrate judge misconstrues plaintiff's argument, which is that "at steps four and five, the ALJ did not assess the mental impairments as mandated by 404.1520a and Social Security Regulation 96-8p." (Pl.'s Objections, p. 3) Plaintiff argues that the ALJ improperly applied the requirements of section 404.1520a(d), and that the magistrate judge did not apply the entirety of that section in his analysis. (Pl.'s Objections, p. 3)

Section 404.1520a(d)(2) requires that, if a mental impairment is severe, the ALJ must determine if it meets or is equivalent in severity to a listed medical disorder. If it does not, the ALJ must then assess the claimant's RFC. 20 C.F.R. § 404.1520a(d)(3). Here, the ALJ determined that plaintiff's mental impairments, considered individually and in combination, do not meet or medically equal the criteria of listed medical disorders. (R. 19) Thereafter, as required, the ALJ continued with the analysis required by section 404.1520a and assessed plaintiff's RFC.

In assessing a claimant's RFC, the ALJ is to consider both physical and mental impairments. 20 C.F.R. § 404.1545(a)(4). Social Security Ruling 96-8p provides that "the RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." S.S.R. 96-8p, 1996 WL 374184, at *1. In assessing a claimant's mental abilities, the ALJ is to consider such factors as "limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting." 20 C.F.R. § 404.1545(c).

Here, the ALJ's RFC assessment spans seven single-spaced pages and is laid out in remarkably thorough detail. (R. 20-26) Specifically discussing plaintiff's mental limitations, the ALJ pointed to a report prepared by Dr. Charles ("Charles"), a state agency non-examining consultant,

14

who reported that plaintiff has no impairment of short term memory, mild impairment of immediate memory and mild impairment of attention and concentration. (R. 24, 534) Additionally, Charles reported that plaintiff's ability to understand, retain and perform instructions was minimally to mildly impaired, and that plaintiff's ability to perform simple, repetitive tasks and to persist at those tasks primarily would be limited by his objective *physical* complaints. (R. 24, 534) The ALJ ultimately gave "limited weight to [Charles'] assessments of the claimant's mental residual functional capacity to the extent supported by additional evidence of record." (R. 25) The ALJ specifically pointed to a third-party report (R. 174), as well as objective medical findings indicating no limitation on plaintiff's short-term memory or deficiencies in concentration (R. 541, 545, 548, 551, 553, 556, 559). The ALJ also determined that "the objective evidence relating to the claimant's complaints of depression and anxiety does not establish significant mental functional limitations and the claimant's testimony to his 'poor memory and concentration' is not supported by the objective medical evidence, which indicates no evidence of short-term memory loss or significant deficiencies in concentration." (R. 25)

Based on the foregoing, plaintiff's argument is without merit. As required by the regulations, after properly determining that plaintiff's mental impairments neither met nor were equivalent in severity to any listing, the ALJ went on to assess plaintiff's RFC. See 20 CFR. § 404.1520a(d)(3). As further required by the regulations, in assessing plaintiff's mental limitations, the ALJ properly addressed the nature and extent of plaintiff's mental limitations and determined plaintiff's RFC on the basis of thorough review of the evidence of record. See id. § 404.1545(a). Plaintiff's objection is overruled.

15

3. Reliance on Testimony of the Vocational Expert

Plaintiff's final argument set forth in his motion for judgment on the pleadings was that the ALJ improperly relied on the vocational expert testimony. (Pl.'s Mem., 9-11) Specifically, plaintiff argues that because the hypothetical posed to the vocational expert did not address plaintiff's mental impairments, the ALJ's reliance on the vocational expert testimony was improper. (Pl.'s Mem., 10) The magistrate judge found plaintiff's argument to be without merit. (M&R, p. 20) Plaintiff does not lodge a specific objection assigning error to the magistrate judge's analysis of this argument.[3] The court agrees that plaintiff's argument is without merit.

The magistrate judge thoroughly set forth the principles governing plaintiff's argument. The purpose of a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform," and "in order for a vocational expert's opinion to be relevant or helpful . . . it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989); see also Pratt v. Sullivan, 956 F.2d 830, 836 (8th Cir. 1992) (stating that hypothetical questions posed to a vocational expert must precisely set out all impairments). However, the hypothetical question posed to a vocational expert need only set out precisely those impairments which the ALJ has found to be credible. See Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005) (finding that hypothetical question was proper where it reflected claimant's characteristics as found by the ALJ). Stated more precisely, "the ALJ is under no duty to present the VE with hypothetical

---

[3] Plaintiff vaguely asserts in his objections that the ALJ conducted an "inadequate questioning of the vocational expert" (Pl.'s Obj., 5), but does not set forth a specific objection assigning error to the magistrate judge's analysis. Accordingly, de novo review does not apply, and the court need only "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond, 416 F.3d at 315.

questions that include plaintiff's claimed impairment if the ALJ has found those impairments to be not severe or credible." Forsyth v. Astrue, No. CBD-09-2776, 2011 WL 691581, *9 (D.Md. Feb. 18, 2011); see also Sobania v. Sec't of Health & Human Servs., 879 F.2d 441, 445 (8th Cir. 1989) (stating that "the hypothetical is sufficient if it sets forth the impairments which are accepted as true by the ALJ").

Here, the ALJ's hypothetical question to the VE included the extensive physical impairments that the ALJ found to be credible, which were set out with precision as required. (R. 66-67). As noted in discussion above, the ALJ found that plaintiff's complaints of mental limitations such as poor memory and concentration were contradicted by objective medical evidence indicating no short-term memory loss or significant deficiencies in concentration. (R. 25) Accordingly, the ALJ was under no duty to present the VE with a hypothetical question including those claimed impairments, because the ALJ found those impairments to be not severe or credible. See Forsyth, 2011 WL 691581, at *9. Plaintiff's argument is therefore without merit.

    4.    Analysis of Transferable Skills

Plaintiff, in his objections to the M&R, for the first time advances argument regarding the ALJ's analysis of transferable skills. (Pl.'s Obj., p. 5-6) Defendant in response argues that because this argument was not raised before the magistrate judge, the argument is not properly before the court and need not be considered. (Def.'s Resp., p. 2) The Fourth Circuit has stated that "as part of its obligation to determine *de novo* any issue to which proper objection is made, a district court is required to consider all arguments directed to that issue, regardless of whether they were raised before the magistrate." U.S. v. George, 971 F.2d 1113, 1118 (4th Cir. 1992). Accordingly, plaintiff's argument regarding analysis of transferable skills is properly before the court.

17

Reaching the end of the sequential evaluation, the ALJ determined that plaintiff was unable to perform any past relevant work due to his physical limitations. (R. 26) Then at step five, the ALJ determined that considering plaintiff's age, education, work experience, and RFC, that plaintiff had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy. (R. 26-27) The ALJ therefore found plaintiff "not disabled." (R. 27)

In reaching this conclusion, the ALJ's analysis was illuminated by the testimony of the vocational expert, who testified that plaintiff's past work as an infantry leader, an auto mechanic, and a criminal investigator were skilled jobs which required use of the following skills: knowledge of military maneuvers, weapons and other equipment, knowledge of mechanical diagnosis and automobile repair tools, skill in prisoner restraint, and knowledge of investigative techniques and report writing. (R. 26-27)

Plaintiff makes two separate assignments of error to the ALJ's analysis. First, plaintiff advances argument that the ALJ erred in determining plaintiff's transferable skills in general. In addition, plaintiff argues that the ALJ did not properly consider plaintiff's age throughout the analysis.

Plaintiff's first argument, which attacks the ALJ's transferable skills analysis without particular specificity, is without merit. The regulations provide that a claimant has transferable skills, or "skills that can be used in other jobs," "when the skilled or semi-skilled work activities [the claimant] did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work." 20 C.F.R. § 404.1568(d)(1). In this case, the vocational expert testified that, through plaintiff's semi-skilled and skilled past work, plaintiff had acquired

18

transferable skills which included knowledge of mechanical diagnosis and automobile repair tools, skills in prisoner restraint, and knowledge of investigative techniques and report writing. (R. 64-68) The vocational expert further testified that a hypothetical individual with plaintiff's profile and skills could perform other work; specifically, the vocational expert testified that a hypothetical individual could perform the work of a security officer or a claims adjudicator. (R. 67) The ALJ properly relied on the vocational expert's testimony as to plaintiff's transferable skills and ability to perform other work. 20 C.F.R. § 404.1566(e) (stating that the ALJ may use the services of a vocational expert in determining whether a claimant's skills are transferable); see also Fines v. Apfel, 149 F.3d 893, 895 (8th Cir. 1998) (noting that the ALJ is permitted to rely upon the expert's opinion as to whether the claimant's skills are transferable).

To the extent plaintiff argues that the ALJ did not properly apply section 1568(d)(2), plaintiff's argument is similarly without merit. That section provides, in determining whether skills can be transferred to other jobs, that "transferability is most probable and meaningful among jobs in which: (i) the same or a lesser degree of skill is required; (ii) the same or similar tools and machines are used; and (iii) the same or similar raw materials, products, processes, or services are involved." 20 C.F.R. § 404.1568(d)(2). However, "a complete similarity of all three factors is not necessary for transferability." Id., § 404.1568(d)(3).

Here, the vocational expert testified that plaintiff's past work included several skilled jobs with an SVP level of seven; specifically, plaintiff's work as an automobile mechanic and criminal investigator is classified as skilled with an SVP level of seven. (R. 64-65) The vocational expert identified other work that plaintiff can perform that required the same degree of skill; specifically, the vocational expert testified that plaintiff can work as a security officer, a skilled position with an

19

SVP level of seven, as well as a claims adjudicator, also a skilled position with an SVP level of seven. (R. 67) A complete similarity of the remaining factors was not necessary, as seemingly argued by plaintiff. See 20 C.F.R. § 404.1568(d)(3).

Plaintiff next argues that the ALJ committed error in her treatment of plaintiff's age when determining whether plaintiff could perform other work, which argument is similarly without merit. The regulations specifically identify age as a vocational factor to be considered, along with RFC, education, and work experience, when determining whether a claimant who cannot perform his past relevant work can nevertheless make an adjustment to other work. 20 C.F.R. § 404.1563(a). The regulations recognize that age can seriously affect a person's ability to adjust to other work, and therefore under the regulations, persons of varying ages are grouped differently. Persons younger than fifty (50) years old are considered "younger persons;" persons between fifty (50) and fifty-four (54) years old are considered "persons closely approaching advanced age," and persons fifty-five (55) and older are categorized as "persons of advanced age." Id. § 404.1563(c)-(e).

Plaintiff was born February 10, 1955, and therefore was fifty-four (54) years old on May 22, 2009, the date of the ALJ's decision. (Pl.'s Mem., p. 3) Accordingly, plaintiff was a "person closely approaching advanced age."[4] Id. § 404.1563(d). Plaintiff recites language from the regulations stating that "individuals approaching advanced age (ages 50-54) may be significantly limited in vocational adaptability if they are restricted to sedentary work. When such individuals . . . can no

_____

[4] The court acknowledges that the regulations provide that, in borderline situations, the age categories are not to be applied "mechanically." 20 C.F.R. § 404.1563(b). For example, "if [a claimant] is within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [the claimant is] disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of [the claimant's] case." Id. Plaintiff's case, however, does not present a borderline situation, as plaintiff was not to turn fifty-five (55) years old for another nine months. Further, plaintiff does not advance argument that he should have been classified as a "person of advanced age."

longer perform vocationally relevant past work and have no transferable skills, a finding of disabled ordinarily obtains." 20 C.F.R. Pt. 404, Subpt. P., App. 2. To the extent plaintiff appears to argue that this language compels a finding of disabled in his case, such argument is meritless. Although plaintiff is restricted to sedentary work, plaintiff does have transferable skills as previously established.

Plaintiff also cites to section 1568(d)(4) which provides that "[i]f you are of advanced age and you have a severe impairment(s) that limits you to no more than sedentary work, we will find that you have skills that are transferable to skilled or semiskilled sedentary work only if the sedentary work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." 20 C.F.R. § 404.1568(d)(4). Plaintiff does not provide argument or analysis as to how this quoted language compels a finding that the ALJ committed error, but the court is satisfied that it does not. Because plaintiff was not a person of advanced age, this section, by its own terms, does not apply.

## CONCLUSION

For the foregoing reasons, upon *de novo* review of those portions of the magistrate judge's M&R to which specific objections have been filed, and upon a considered review of the uncontested portions of the M&R, the court ADOPTS in full the findings and recommendations of the magistrate judge (DE #40) as its own. Plaintiff's motion for judgment on the pleadings (DE #34) is DENIED, and defendant's motion for judgment on the pleadings (DE #38) is GRANTED. The final decision of the Commissioner is upheld. The Clerk is DIRECTED to close this case.

21

SO ORDERED this the 5<sup>t</sup> day of May, 2011.

LOUISE W. FLANAGAN
Chief United States District Judge

22